Slip Op. 13-85

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| FORMER EMPLOYEES OF WEATHER SHIELD MANUFACTURING, INC., | Before: Judith M. Barzilay, Senior Judge |
| Plaintiff, | Court No. 10-00299 Public Version |
| v. |  |
| U.S. SECRETARY OF LABOR, |  |
| Defendant. |  |

[Plaintiffs' motion for judgment on the agency record is denied and the Department of Labor's remand results are sustained.]

Dated: July 1, 2013

*Cassidy Levy Kent (USA) LLP* (*James R. Cannon, Jr.*) and *Williams Mullen, PC* (*Dean A. Barclay and J. Forbes Thompson*) for Plaintiff Former Employees of Weather Shield Manufacturing, Inc.

*Stuart F. Delery*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Antonia R. Soares*) for Defendant United States; *Vincent Costantino*, Office of the Solicitor, United States Department of Labor, of Counsel.

**OPINION**

This matter comes before the court upon Plaintiffs' motion for judgment on the agency record filed pursuant to USCIT R. 56.1. The case returns to the court for the fourth time following the U.S. Department of Labor's ("Labor") negative determination on remand. *See*

*Weather Shield Manufacturing, Inc. Corporate Office, Medford, WI: Notice of Negative Determination on Third Remand*, 78 Fed. Reg. 775 (Dep't of Labor Jan. 4, 2013) ("*Remand Results*"). Plaintiffs are former administrative support employees of Weather Shield Manufacturing, Inc. ("Weather Shield"), a producer of doors and windows, who challenge Labor's decision denying their application for Trade Adjustment Assistance ("TAA") under Section 222 of the Trade Act of 1974, as amended by the Trade and Globalization Adjustment Assistance Act of 2009, 19 U.S.C. § 2272. Labor has again determined that Plaintiffs are ineligible for TAA benefits for the 2008 to 2009 period, and Plaintiffs maintain that this determination is not supported by substantial evidence. The court has jurisdiction pursuant to 28 U.S.C. § 1581(d). For the reasons set forth below the court sustains Labor's determination.

## STANDARD OF REVIEW

Findings of fact made by Labor during TAA investigations "if supported by substantial evidence, shall be conclusive." 19 U.S.C. § 2395(b). "Although substantial evidence must be more than a 'mere scintilla,' it is 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Former Employees of Barry Callebaut v. Chao*, 357 F.3d 1377, 1381 (Fed. Cir. 2004) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Rather, the role of the court is to "merely vet the determination," and to affirm where that determination "is reasonable and supported by the record as a whole . . . ." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (quotation omitted).

## DISCUSSION

The TAA program provides a range of benefits to workers who have lost their jobs due to increased imports or shifts in production to a foreign country. *See* 19 U.S.C. § 2272. Under the statute, Labor must first determine whether a "significant number or proportion of the workers in such workers' firm have become totally or partially separated or are threatened to become totally or partially separated" from employment. *See* 19 U.S.C. § 2272(a)(1). That requirement is satisfied here.

Once the separation element has been satisfied, Labor must then determine if one of two other provisions of the statute are satisfied. *See* 19 U.S.C. §§ 2272(a)(2)(A) & (B). Under § 2272(a)(2)(A), Labor must determine whether: (1) "sales or production, or both, of such firm have decreased absolutely;" (2) "imports of articles . . . like or directly competitive with articles produced . . . by such firm have increased;" and (3) that increase in imports "contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm." 19 U.S.C. § 2272(a)(2)(A)(i) - (iii).

Under § 2272(a)(2)(B), Labor will investigate whether (1) "there has been a shift by such workers' firm to a foreign country in the production of articles . . . like or directly competitive with articles which are produced . . . by such firm;" or the firm "acquired from a foreign country articles . . . that are like or directly competitive with articles which are produced . . . by such firm;" and (2) this shift "contributed importantly to such workers' separation or threat of separation." 19 U.S.C. § 2272(a)(2)(B)(i) - (ii).

In its previous remand order, the court directed Labor to provide a fuller explanation for a downward adjustment in Weather Shield's 2008 sales data, and to further investigate whether Weather Shield's customers were purchasing imports. Following issuance of that order, Labor

sent a number of emails to Weather Shield requesting that it explain why its 2008 sales were adjusted downward from [[          ]] to [[          ]]. Supplemental Updated Administrative Record ("SUAR") 32-34. This adjustment was material because 2009 sales were [[          ]], so the new 2008 sales number turned a decrease in sales during the 2008-2009 period into an increase. Brandon Brunner, Weather Shield's corporate counsel, responded that the original higher 2008 number had included intercompany sales and the lower number was adjusted to reflect net sales to customers only. *Id.* at 32.

Because 19 U.S.C. § 2272(a)(2)(A)(i) contemplates an award of TAA if either sales or production have decreased, Labor also requested production data from Weather Shield for the relevant period. *Id.* at 35-38. After receiving several follow-up requests from Labor, Brunner responded that he "had requested these numbers and will provide them shortly. This request is not as easily provided as you may think and is taking the efforts of several people running several different quires [sic] of our electronic data." *Id.* at 35. Brunner followed up the next day stating that Weather Shield had manufactured [[          ]] window and door units in 2008 and [[          ]] in 2009. *Id.* at 41. Noting that these numbers reflected a [[          ]] decrease in production during the same period that Weather Shield reported a [[          ]] sales increase, Labor asked Weather Shield to explain the "contradictory pattern" evidenced by this data. *Id.* at 40. Labor did not receive an immediate response to this inquiry and so it sent a follow-up email with a reminder that this information was necessary to conclude the investigation. *Id.* At that point, Brunner responded that he did not know the answer to the question, and was unable to divert resources to the request. *Id.*

Upon receiving this response from Brunner, Labor reiterated the importance of the requested information to the remand investigation, and issued to Weather Shield a subpoena

warning letter. *Id.* at 46-47. The letter provided a deadline by which Weather Shield was to explain the inconsistent sales and production data, and stated that if Weather Shield failed to provide an explanation, Labor would issue a subpoena in order to obtain it. *Id.* at 47. When Weather Shield failed to provide an explanation by the deadline, Labor issued a subpoena citing 19 U.S.C. §§ 2272(d)(3)(B) & 2321 and 29 C.F.R. 90.14(a). [1] At that point, Weather Shield submitted a letter to Labor saying that the production numbers previously reported were incorrect, and that production had actually increased from [[     ]] units in 2008 to [[     ]] units in 2009. *Id.* at 81. Labor received two sets of comments from Plaintiffs challenging the sales and production data Weather Shield provided. *Id.* at 382-86, 467-69; *Remand Results*, 78 Fed. Reg. at 777-78. Ultimately, however, Labor found the information provided by Weather Shield reliable, and the company's increased sales and production between 2008 and 2009 formed a basis for the *Remand Results'* negative determination.

Plaintiffs argue that Labor's determination cannot be sustained because Weather Shield never explained why it changed its production numbers, and the agency should have investigated the change further. Additionally, Plaintiffs call into question the accuracy of Weather Shield's production data by relying on the company's closure of its Greenwood, WI manufacturing facility in 2009. *Id.* at 15. "One would expect," Plaintiffs argue, a plant closure to lead to a decrease in production, yet Weather Shield reported an increase and Labor failed to inquire further into this "apparent contradiction." Pl. Br. 16. Regarding the sales data, Plaintiffs point out that the original 2008 and 2009 sales numbers were reported at the same time. Plaintiffs argue that it is therefore "logical to assume" that the numbers were based on the same type of

---

[1] These provisions establish Labor's authority to issue subpoenas during TAA investigations, and to petition the U.S. District Courts for an order requiring compliance should a party refuse to obey the subpoena.

data, and that if the 2008 number was adjusted downward after excluding intercompany sales the 2009 number may merit a similar adjustment. Pl. Br. 18. Because Labor failed to inquire into this possibility, Plaintiffs argue that the court cannot sustain the *Remand Results* as supported by substantial evidence.

After reviewing the record, the court concludes that Labor's determination regarding Weather Shield's increased sales and production is supported by substantial evidence. Upon providing the adjusted production numbers, Brunner informed Labor that the numbers originally provided were incorrect and that he was providing corrected numbers. *Id.* at 81. Likewise, Brunner informed Labor that the 2008 sales numbers were adjusted downward because the original numbers included intercompany sales. *Id.* at 32. Accordingly, Labor was not faced with a record containing unaddressed or unexplained contradictions. While Weather Shield's explanations were not extensive, they did provide a basis according to which Labor could weigh Weather Shield's adjusted numbers. *See Former Employees of Marathon Ashland Pipe Line, LLC v. Chao*, 370 F. 3d 1375, 1385 (Fed. Cir. 2004) ("[Labor] is entitled to base an adjustment assistance eligibility determination on statements from company officials if [Labor] reasonably concludes that those statements are creditworthy and are not contradicted by other evidence.").

The question then becomes whether Labor reasonably concluded that Brunner's statements were creditworthy, and the court concludes that it did. First, after gathering the information set forth above during several months of email and letter correspondence, Labor issued an Affirmation of Information. *Id.* at 176-78. The Affirmation requested that a representative of Weather Shield affirm a number of statements if true, including the following:

> Weather Shield window and door sales in 2008 total [[               ]] (U.S. dollars).

> Weather Shield window and door sales in 2009 total [[          ]] (U.S. dollars).
>
> Weather Shield window and door production in 2008 total [[          ]] (units).
>
> Weather Shield window and door production in 2009 total [[          ]] (units).

*Id.* at 177. The Affirmation then stated that the signer understood that

> providing false information is a Federal offense (18 U.S.C. § 1001) and is a violation of the Trade Act (19 U.S.C. § 2316). By signing the below, I agree to the following statement:
> **"Under penalty of law, I declare that to the best of my knowledge and belief the information I have provided in this document is true, correct, and complete."**

*Id.* at 178 (emphasis in original). After writing "Yes" under each of the statements above, Brunner signed the Affirmation. Labor determined that it was reasonable to rely on information provided subject to such penalties, and the court concludes that this reliance was reasonable. *See Former Employees of Barry Callebaut*, 357 F.3d at 1383 (finding that a statement that an affidavit is signed "subject to punishment" for supplying false information is indicia that the affidavit is sufficiently "trustworthy to constitute substantial evidence").

That Labor was reasonable in relying on the sales and production data provided by Weather Shield is bolstered by the fact that while Plaintiffs raise questions regarding Labor's determination, they point to no evidence in the record contradicting the evidence on which Labor relied. The closest they come is in arguing that the 2009 Greenwood, WI plant closure is inconsistent with increased production, or that the 2009 sales data may warrant the same downward adjustment the 2008 data did. While these may have been legitimate avenues of inquiry for Labor to undertake, the agency's failure to do so did not render the inquiries it did undertake, and the evidence upon which it relied, so infirm as to fail the substantial evidence standard. *Former Employees of Barry Callebaut*, 357 F.3d at 1381.

Additionally, these were not the first proceedings in which Labor investigated Weather Shield.  In fact, Brunner had been Weather Shield's primary representative in previous proceedings in which separated workers were awarded TAA, *see Weather Shield Manufacturing, Inc., Corporate Office, Medford, WI; Notice of Revised Determination on Remand*, 75 Fed. Reg. 51,851 (Dep't of Labor Aug. 23, 2010), and this prior experience gave Labor no reason to question his credibility.  Def. Br. 20.  Moreover, while Weather Shield and Brunner were not responsible for providing the benefits that would have accompanied an award of TAA, they are the ones that would suffer the penalties of responding untruthfully to Labor.  Labor reasonably considered this while weighing the information provided.  *Remand Results*, 78 Fed. Reg. at 778.  Taking all of these facts together, the court concludes that it was reasonable for Labor to rely on the sales and production data provided during the investigation, and that Labor's determination that TAA was unavailable under 19 U.S.C. § 2272(a)(2)(A) because of the increase in Weather Shield's sales and production was supported by substantial evidence.

Labor also addressed the issue of imports during its remand investigation.  In the previous remand order, the court expressed concern that Labor had not sufficiently investigated whether [[     ]], a customer of Weather Shield, was sold imports by its other suppliers.  On remand, Labor engaged in an extensive survey, SUAR 241-93, 475-77, during which it contacted all of [[     ]] suppliers and determined the size of those suppliers, whether the suppliers' sales to [[     ]] increased or decreased during the relevant period, and the extent to which those sales consisted of imports.  *Remand Results*, 78 Fed. Reg. at 779.  The information gathered revealed that most of the suppliers did not sell imports to [[     ]].  Moreover, even though some suppliers did sell [[     ]] imported goods, those goods accounted for less than 2% of the company's non-Weather Shield purchases in 2008 and 2009.  SUAR 477, 522.  The

court is satisfied that substantial evidence supported the conclusion Labor reached based upon this information, namely that increased imports did not contribute importantly to the relevant worker separations.

Plaintiffs appear satisfied as well because they do not challenge this conclusion here. Rather, Plaintiffs argue that Labor failed to sufficiently investigate evidence that Weather Shield received imported door parts from a supplier named [[     ]]. In support, Plaintiffs submitted ship manifest data showing that [[   ]] was the consignee on ten shipments of door parts from Taiwan in 2008 that were ultimately delivered to Weather Shield. *Id.* at 386. Plaintiffs argue that this information may show a "shift . . . to a foreign country in the production of articles . . . like or directly competitive with articles which are produced . . . by such firm" thus qualifying the Plaintiffs for TAA eligibility under 19 U.S.C. § 2272(a)(2)(B). The court notes that this is a different basis for eligibility than has been asserted by Plaintiffs up to this point. However, given the nature of the TAA statutory regime, the court finds that it is appropriate to consider whether Plaintiffs are entitled to relief under this provision. *See Former Employees of Invista, S.A.R.L. v. U.S. Secretary of Labor*, 34 CIT __, 714 F. Supp. 2d 1320, 1336 (2010). ("[B]ecause of the *ex parte* nature of the certification process, and the remedial purpose of the [TAA] program, the agency is obligated to conduct [its] investigation with the utmost regard for the interest of the petitioning workers.") (quotation omitted).

After receiving this information, Labor inquired into whether Weather Shield imported doors or windows during the relevant period. SUAR 84. Brunner responded saying that Weather Shield had not, but stated that he was unsure whether its suppliers had. *Id.* To aid in Labor's investigation, Brunner supplied a list of Weather Shield's top twenty vendors and their contact information. *Id.* at 105. Brunner also stated that the items purchased from [[   ]] were

not complete door units, but [[    ]] which were then placed into door frames manufactured by Weather Shield. *Id.* at 142. In other words, according to Brunner the [[    ]] purchased from [[    ]] and the door frame manufactured by Weather Shield, were assembled into "door units" which were then sold by Weather Shield. *Id.*

Additionally, the Affirmation of Information covered imports as well, and in it Brunner affirmed the following statements:

> Weather Shield did not import finished windows in 2008.
>
> Weather Shield did not import finished windows in 2009.
>
> Weather Shield did not import finished doors in 2008.
>
> Weather Shield did not import finished doors in 2009.
>
> In 2008, no entity which is part of the Schield Family Companies entered into contracts to bring into the U.S.A. either finished windows, finished doors, or articles that are like or directly competitive with either finished windows or finished doors.
>
> In 2009, no entity which is part of the Schield Family Companies entered into contracts to bring into the U.S.A. either finished windows, finished doors, or articles that are like or directly competitive with either finished windows or finished doors.

*Id.* at 177-78. Finally, Labor conducted its own search seeking to turn up evidence of imports similar to the [[    ]] imports, and the search retuned no results. *Id.* at 481-82, 485-88.

As an initial matter, the court notes that both Brunner and Labor focus on the fact that the goods received from [[    ]] were [[    ]], which are not "like or directly competitive with" the completed door units sold by Weather Shield. *See, e.g., id.* at 84, 178. However, it is not correct to focus only on completed door units because TAA eligibility can be found if a company shifts production to, or acquires from, a foreign country articles "like or directly competitive with" those produced by the company. There is no requirement that the shift in production, or

foreign acquisition, involve only articles "like" those produced by the company for final sale. Accordingly, if Weather Shield produced [[      ]] itself, TAA eligibility could be impacted if Weather Shield shifted production to, or acquired from, a foreign country [[      ]] "like" the ones it produces.

However, the evidence on the record indicates that Weather Shield does not produce [[      ]]. When questioned on this point, Brunner stated that Weather Shield purchased the [[      ]] from [[      ]], incorporated them into Weather Shield-manufactured door frames, and then sold the completed door units. *Id.* 142. The parts imported in ten shipments in 2008 by [[      ]], namely [[      ]], were not "like or directly competitive with" items produced by Weather Shield, namely door frames and completed door units. Moreover, Labor's own search turned up no other similar goods imported and ultimately destined for Weather Shield. The court therefore concludes that Labor sufficiently investigated this matter after Plaintiff submitted evidence of the 2008 imports, and that it reasonably concluded that no shift in production, or acquisition of foreign articles, contributed importantly to Plaintiffs' separation.

## CONCLUSION

Labor's *Remand Results* are supported by substantial evidence and otherwise in accord with the law and shall be sustained.


Dated:  July 1, 2013                                                           /s/ Judith M. Barzilay
        New York, NY                                              Judith M. Barzilay, Senior Judge